**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **LATESHA WILLIAMS,** | |
| *Plaintiff,* | Civil Action No: |
| *v.* | Judge: |
| **JARYAH BOBO, ZAHARA ARIEL LLC dba CARDS FOR ALL PEOPLE, and MTF PARTNERS LLC** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendants.* | |

## THE PARTIES

1.      Plaintiff Latesha Williams ("Plaintiff" or "Williams") is an individual residing at 395 Halsey Street, Brooklyn, New York 11233.

2.      Upon information and belief, Defendant Jaryah Bobo ("Bobo") is an individual residing at 2765 Bexley Park Road, Columbus, Ohio 43205.

3.      Upon information and belief, Defendant Zahara Ariel LLC dba Cards for All People ("Zahara") is an Ohio limited liability company having a principal place of business at 5709 Westbourne Avenue, Columbus, Ohio 43213.

4.      Upon information and belief, Defendant MTF Partners LLC ("MTF") is an Ohio limited liability company having a principal place of business at 5709 Westbourne Avenue, Columbus, Ohio 43213.

## JURISDICTION AND VENUE

5.      This action arises and is brought under the Copyright Act, 17 U.S.C. § 101 *et seq.*

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Copyright Act, 17 U.S.C. § 101, *et seq.* and the

Lanham Act, 15 U.S.C. § 1120. This Court also has subject matter jurisdiction pursuant to 32 U.S.C. § 1332(a) based upon diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Bobo because Bobo resides within this judicial district.  The Court also has specific jurisdiction over Bobo based upon Bobo's actual awareness of Plaintiff's co-authorship rights in the copyrights at issue and because of Bobo's ongoing breach of fiduciary duty.

8.      This Court has personal jurisdiction over Zahara because Zahara has continuous and systematic contacts within this judicial district through its principal place of business within this judicial district, its sale of products in this judicial district, and its sales representatives located in this judicial district.  The Court also has specific jurisdiction over Zahara based upon Zahara's actual awareness of Plaintiff's co-authorship rights in the copyrights at issue and Plaintiff's rights in the trademarks at issue.

9.      This Court has personal jurisdiction over MTF because MTF has continuous and systematic contacts within this judicial district through its principal place of business within this judicial district.  The Court also has specific jurisdiction over MTF based upon MTF's actual awareness of Plaintiff's co-authorship rights in the copyrights at issue and Plaintiff's rights in the trademarks at issue.

10.     This Court also has supplemental jurisdiction over Defendants pursuant to 28 U.S.C. §1367.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c)(2) because of this Court's personal jurisdiction over Defendants.

**FACTS**

2

**A.  The Creation of Black Card Revoked**

12.     Williams is an experienced and accomplished sports and entertainment professional, who has worked with celebrities and national brands such as LeBron James, MTV, Nickelodeon and Rocawear.

13.     Referred to as "the mastermind behind the phenomenon known as Black Card Revoked," Williams has been credited as a creator and developer of the game Black Card Revoked. *See* Ex. A.

14.     In 2015, Williams and Bobo partnered to create a game centered on the shared Black experience.

15.     Beginning with the Rachel Dolezal controversy, in or about May 2015, Williams and Bobo initiated data mining efforts of popular topics, memes, gifs, hashtags, tweets, historical facts, and dialogue between popular regional and national influencers and their respective audiences in order to create content for Black Card Revoked. This data mining also included tapping into comedic controversial themes of Williams' and Bobo's own experiences and that of their families and friends. Williams and Bobo also reviewed cable television schedules for what popular black sitcoms are syndicated. Altogether, this data mining led to the creation of content for a game Williams and Bobo initially called Cards For All People.

16.     Using their research, Williams and Bobo identified questions, topics, comedic, and controversial answers that intersect key topics and categories identified within the Black experience, including but not limited to food, church, hair, and work.

17.     Questions were inserted into a spreadsheet, and Williams and Bobo inserted answer choices with the most comedic and controversial answers from personal experiences and

social media data mining. Subsequently, Williams and Bobo collaborated on which cards would be the most reactive for inclusion into the game.

18.     As part of their developmental process, in or about July 2015, Williams and Bobo play-tested sample cards with Williams' family and friends, who provided feedback resulting in significant content updates to the initial deck.

19.     Williams and Bobo continued to fine tune the question and response cards and in September 2015 changed the name of the game from Cards For All People to Black Card Revoked.

20.     Williams specifically contributed to all material aspects of the creation of Black Card Revoked, including the concept, the selection, drafting, and revisions to all of the game questions and content as well as developing business and marketing plans and efforts.

21.     Williams specifically contributed to Bobo and Williams effort to commercialize Black Card Revoked, resulting in a collaboration that successfully brought Black Card Revoked to market.

22.     Williams' and Bobo's partnership to create and commercialize Black Card Revoked was successful, resulting in Black Card Revoked becoming the leading American black culture trivia game in the United States, as well as a television show that aired on Black Entertainment Television (BET), the first Black trivia game of its kind.

23.     Black Card Revoked has also led to spin off affiliated games, including but not limited to additional editions of the "Original Flavor," Girls Night Out, Gay Card Revoked, and Southern Education (collectively, the "CFA Products"), each edition of which Williams co-authored.

24.     Williams and Bobo collaborated in the creation of the copyrighted works for Black Card Revoked and the CFA Products with the intention that their contributions be merged into inseparable or interdependent parts of the CFA Products and Black Card Revoked.

25.     Black Card Revoked and CFA Products are currently sold online and nationwide through Zahara's website (cardsforallpeople.com) as well as authorized retailers including Target, Amazon.com, GoPuff, the Charles H. Wright Museum, Games by James, Uncle Bobbie's Coffee and Books, Board Game Barrister, Kibler's Kollectibles, and CLASS Bookstore.

26.     Based on Williams' contributions authoring Black Card Revoked and the CFA Products, Williams is a co-author of the underlying copyrights in Black Card Revoked and the CFA Products.

**B. The CFA Products.**

27.     In an attempt to manage the intellectual property of Black Card Revoked and the CFA Products, Williams and Bobo entered into a de facto partnership ("CFA Partnership") under Ohio law.  Bobo consented to the CFA Partnership.

28.     Using the CFA Partnership, Williams and Bobo commercialized the intellectual property rights of Black Card Revoked and the CFA products, which they co-authored and co-owned, including but not limited to marketing, selling, and distributing Black Card Revoked and the CFA Products as well as licensing and monetizing the rights to third-party entities.

29.     As part of their partnership efforts, Williams and Bobo conceived of and used various trademarks in connection with Black Card Revoked and the CFA Products.

30.     Upon information and belief, Bobo applied for a number of trademarks created for and used by the CFA Partnership with the United States Patent and Trademark Office ("USPTO"), but listed Zahara as the owner. Such trademark registrations include JEWISH

CARD REVOKED (Reg. No. 6,717,388), BLACK CARD REVOKED (Reg. No. 5,162,881), GAY CARD REVOKED (Reg. No. 5,380,046), GIRLS NIGHT OUT (Reg. No. 5,221,692), NERD CARD REVOKED (Reg. No. 4,998,128), LATINO CARD REVOKED (Reg. No. 5,453,306), ASIAN CARD REVOKED (Reg. No. 5,105,132), CARD REVOKED (Reg. No. 5,067,272), and BLACK CARD REVOKED (Reg. No. 4,927,011) (collectively, the "CFA Marks").

31.     Because the CFA Marks were conceived of, developed by, and used in commerce in connection with Black Card Revoked and the CFA Products and on behalf of the CFA Partnership, the CFA Marks are the intellectual property of and owned by the CFA Partnership.

32.     Bobo knew that the registrations were not owned by Zahara and instead were owned by the CFA Partnership.

33.     Bobo and Zahara knew that Zahara was not the lawful owner of the CFA Marks when they submitted the USPTO applications for the CFA Marks and thus knowingly falsely stated and misrepresented the true ownership of the CFA Marks to the USPTO.

34.     Neither Bobo nor Zahara was authorized by the CFA Partnership to register the CFA Marks in Zahara's name.

35.     Bobo and Zahara fraudulently registered the CFA Marks in Zahara's name with the intention to misappropriate the CFA Partnership assets for Bobo and Zahara's sole benefit, to deprive Williams of ownership of the CFA Marks, and to deceive the USPTO and the public as to the lawful owner of the CFA Marks.

36.     Bobo falsely represented to Williams that Bobo was handling legal issues regarding protecting and securing the CFA Partnership's intellectual property and assets, including the CFA Marks, for the benefit of the CFA Partnership, Williams, and Bobo.

37. Bobo represented to Williams that he was handling the CFA Products and Black Card Revoked business for their mutual benefit, and Williams relied on such representations.

38. Bobo and Zahara expressly intended to influence the USPTO and Williams and cause them each to rely on Bobo's and Zahara's misrepresentations, acting to their detriment.

39. Relying on Bobo's and Zahara's representations as to ownership, the USPTO incorrectly awarded registrations of the CFA Marks to Zahara instead of the CFA Partnership.

40. Relying in good faith upon the representations of Bobo and Zahara, Williams permitted Bobo and Zahara to market and sell Black Card Revoked and the CFA Products for the benefit of the CFA Partnership.

41. Williams relied on Bobo's fraudulent misrepresentations by allowing Bobo to manage the CFA Partnership's assets with the expectation that he would secure the assets for the benefit of the CFA Partnership, and therefore, for the benefit of its partners, Williams and Bobo.

42. The CFA Partnership, the USPTO, the public, and Williams have been materially damaged by the fraudulent registrations and misrepresentations by Bobo and Zahara as a result of the registrations for the CFA Marks being wrongfully and incorrectly issued to Zahara as the owner instead of the CFA Partnership on behalf of Bobo and Williams.

43. Upon information and belief, Bobo is the sole member of Zahara.

44. Upon information and belief, Bobo and Zahara registered the CFA Marks with the USPTO under Zahara's name in order to monetize the intellectual property rights for Black Card Revoked and the CFA Products for Bobo's sole benefit, without Williams' intervention and to deprive Williams of any benefit and income derived from the use and commercial exploitation of the CFA Marks.

45.     Pursuant to Ohio law, Williams, as a 50% owner of the CFA Partnership, never received fifty percent of the revenue or any share of any profit derived from the CFA Partnership.

46.     Upon information and belief, Bobo and Zahara have converted, misappropriated, used, and/or taken the CFA Partnership's assets to Williams' detriment and Bobo's and Zahara's own benefits.

47.     Williams has never received compensation for her co-authorship of Black Card Revoked or the CFA Products while Bobo has received compensation for his co-authorship role.

48.     Bobo and Zahara have never accounted for any compensation owed to the CFA Partnership and Williams.

49.     Upon information and belief, Bobo and Zahara have withheld compensation duly owed to the CFA Partnership and Williams.

50.     Bobo and Zahara have refused to account to Williams for her share of the revenue of Black Card Revoked copyrights, the CFA Products' copyrights, the CFA Partnership, and the CFA Products.

51.     Upon information and belief, Bobo and Zahara have misappropriated the intellectual property, including the copyrights and trademarks, of Black Card Revoked, the CFA Products and the CFA Marks when Bobo licensed the intellectual property to third parties without Williams' consent or authorization.

**C.  MTF and Its Commercialization Efforts**

52.     In addition to the CFA Partnership, Williams and Bobo formed MTF to commercialize the intellectual property rights of Black Card Revoked, the CFA Products, and the CFA Marks specifically for television and stage.

53. On or about April 25, 2017, Zahara and MTF entered into a Trademark License Agreement ("License Agreement"). *See* Exhibit B. Pursuant to the terms of the License Agreement, MTF was compensated by third parties in exchange for producing, developing, selling and distributing television and theatrical shows using Black Card Revoked, the CFA Products, and the CFA Marks.

54. According to the License Agreement, Williams' rights to Black Card Revoked, the CFA Products and CFA Marks were transferred to Zahara.

55. Williams never consented to transferring her authorship or ownership rights in Black Card Revoked, the CFA Products, or the CFA Marks to Zahara nor has she ever executed any assignment documents transferring her ownership or authorship rights.

56. Upon information and belief, Bobo has misappropriated funds from MTF, including but not limited to diverting funds due to MTF to himself, Zahara, or other entities controlled by Bobo.

57.

58. Williams has made written requests to Bobo for MTF company information pursuant to O.R.C. § 1706, including company books and records and an accounting.

59. On or about April 8, 2022, and again on or about May 25, 2022, Williams made written requests for MTF company information, including: company formation and organizational documents, meeting minutes, resolutions, member agreements, EIN documentation, and other documentation and records related to membership interest, formation, or governance of MTF. *See* Exhibit C.

60. Williams' April 8, 2022 correspondence also requested an accounting of all revenue, expenses, assets, and liabilities related to Zahara and MTF, copies of all agreements

related to Williams or made with third parties, and an accounting and itemization of any and all copyrights and trademarks, along with any corresponding or related registration. *Id.*

61.    On May 27, 2022 Bobo responded to Williams' requests, refusing to provide any of the requested documentation and information in violation of his fiduciary and statutory obligations.

62.    Bobo has also refused to provide a full and proper accounting for any distributions from MTF in breach of his fiduciary duty as a member in MTF.

63.    Upon information and belief, Bobo took distributions from MTF to Williams' detriment in breach of his fiduciary duty as a member in MTF.

## COUNT I – Declaratory Judgment of Copyright Authorship

64.    Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

65.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of copyright authorship.

66.    Williams was and is a joint-author of the copyrights for Black Card Revoked and the CFA Products.

67.    Williams has not executed an assignment or any agreement to transfer any copyrights or rights under copyright in the CFA Products or Black Card Revoked to any third-party.

68.    As a result of being an author, pursuant to 17 U.S.C. § 201(a), Williams is also a co-owner of the copyrights in the CFA Products and Black Card Revoked.

69.     The copyrights in and to the CFA Products and Black Card Revoked are "Joint Works" pursuant to 17 U.S.C. § 101, with Bobo and Williams each being a joint-author and a co-owner.

70.     Any purported conveyance of Williams' ownership in the jointly-owned copyrights for Black Card Revoked and the CFA Products is unenforceable and void *ab initio* under the statute of frauds pursuant to 17 U.S.C. § 204(a).

71.     A judicial declaration is necessary and appropriate so that Williams may ascertain her rights regarding the her co-authorship and co-ownership of the jointly-owned copyrights for Black Card Revoked and the CFA Products.

72.     Williams is entitled to a declaratory judgment that she is the co-author of the copyrights for Black Card Revoked and the CFA Products.

73.     As a joint author and co-owner of the copyrights for Black Card Revoked and the CFA Products, Williams is entitled to one-half of the revenue earned from the exploitation of those copyrights.

## COUNT II – Declaratory Judgment of CFA Partnership

74.     Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

75.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of the existence of the CFA Partnership and Williams' membership interest in the same.

76.     Williams was and is a partner in the CFA Partnership under Ohio law.

77.     All intellectual property developed under the CFA Partnership are the assets of the CFA Partnership, including but not limited to the CFA Marks.

78.     The CFA Products and all personal property related thereto are assets owned by the CFA Partnership.

79.     All sales and license revenue of Black Card Revoked and the CFA Products are revenue under and for the benefit the CFA Partnership and its partners, Williams and Bobo.

80.     As a member of the CFA Partnership, Williams is entitled to one-half of all CFA Partnership revenue, including revenue derived from sales and licensing of Black Card Revoked and the CFA Products.

81.     A judicial declaration is necessary and appropriate so that Williams may ascertain her membership interest in the CFA Partnership.

82.     Williams is entitled to a declaratory judgment that the CFA Partnership is valid and that she is a partner in the CFA Partnership.

83.     As a member of the CFA Partnership, Williams is entitled to one-half of all revenue derived from the use and licensing of the CFA Marks.

### COUNT III – Breach of Fiduciary Duty

84.     Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

85.     Bobo owes a fiduciary duty to Williams through their partnership in the CFA Partnership and their membership in MTF.

86.     Upon information and belief, Bobo breached his fiduciary duty in the CFA Partnership by using CFA Partnership assets to his benefit but to Williams' detriment.

87.     Bobo breached his fiduciary duty and his obligations under O.R.C § 1706 by declining to share any documentation with Williams, also a member of MTF, including but not limited to company agreements, books and records, organizational documentation, company assets and liabilities, and financial documentation, despite her repeated requests for documentation.

88.     Bobo further breached his fiduciary duty to Williams by taking distributions from the MTF account to his benefit and Williams' detriment, without the affirmative vote or consent of MTF members, and by not providing equal distributions to Williams.

89.     Zahara owes a fiduciary duty to Williams as the purported manager of the copyrights for Black Card Revoked and the CFA Products based on Williams' co-ownership of the underlying copyrights for Black Card Revoked and the CFA Products.

90.     Bobo and Zahara breached their fiduciary duties to Williams in continuing to monetize the CFA Products and CFA Marks to their benefits but to Williams' detriment.

91.     Bobo and Zahara breached their fiduciary duties to Williams in failing to disclose any information related to sales of Black Card Revoked and the CFA Products.

92.     Bobo and Zahara breached their fiduciary duties to Williams in failing to disclose any information related to the licensing of the CFA Marks.

93.     Bobo breached his duty to Williams in failing to adequately compensate Williams for her co-authorship and co-ownership of the copyrights for Black Card Revoked and the CFA Products.

94.     Bobo owes a fiduciary duty to Williams through their membership in MTF.

95.     Bobo breached his fiduciary duty to Williams in making distributions to Bobo but not Williams and by making distributions without authority of MTF or a majority of the MTF members.

96.     As a result of Bobo's and Zahara's continued conduct, Williams has suffered damages.

97.     As a member of the CFA Partnership, Williams is entitled to one-half of the revenue earned by the CFA Partnership and from the exploitation of any CFA Partnership assets, including but not limited to the CFA Marks, and any sales of CFA Products and Black Card Revoked.

### COUNT IV – Request for Accounting on Copyright Revenue and Expenses

98.     Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

99.     By virtue of their co-authorship and co-ownership of the copyrights for Black Card Revoked and the CFA products, Bobo owes Williams all documentation regarding revenue and expenses related to exploitation of the copyrights for Black Card Revoked and the CFA Products.

100.     Williams is a co-author and co-owner of the copyrights for Black Card Revoked and the CFA Products and is entitled to one-half of the income earned from the exploitation of those copyrights.

### COUNT V – Request for Accounting Regarding MTF

101.     Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

102.     By virtue of their partnership in MTF, Bobo owes Williams all documentation regarding revenue and expenses related to MTF as well as all documentation pursuant to O.R.C § 1706.

103.     Williams is a partner in MTF and is entitled to at least one half of any funds that Bobo has misappropriated from MTF.

### COUNT VI – Unjust Enrichment

104.     Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

105.     Bobo and Zahara have wrongfully taken distributions from the CFA Partnership and MTF to their benefits.

106.     The CFA Partnership and MTF have conferred benefits on Bobo and Zahara, including but not limited to revenue derived from sales of the CFA Products and monetization of the CFA Marks.

107.     Williams has not received equitable distributions from the CFA Partnership or MTF for revenue derived from sales of the CFA Products and monetization of the CFA Marks.

108.     To allow Bobo and Zahara to retain the benefits under these circumstances would be unjust.

109.     Permitting Bobo and Zahara to be unjustly enriched would be inequitable.

110.     Bobo and Zahara should be divested of their unjustly gained enrichment and should pay Williams restitution so that Williams is returned to the status quo.

### COUNT VII – False Or Fraudulent Trademark Registration

111.     Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

112. Upon information and belief, Zahara retained attorney Kwame O. Christian ("Christian") of 1962 Suffolk Road Upper Arlington, Ohio 43221 to register the CFA Marks.

113. According to the records of the USPTO, acting for Zahara, Christian signed and filed applications for the CFA Marks with the USPTO.

114. Such trademark applications include JEWISH CARD REVOKED (Reg. No. 6,717,388), BLACK CARD REVOKED (Reg. No. 5,162,881), GAY CARD REVOKED (Reg. No. 5,380,046), GIRLS NIGHT OUT (Reg. No. 5,221,692), NERD CARD REVOKED (Reg. No. 4,998,128), LATINO CARD REVOKED (Reg. No. 5,453,306), ASIAN CARD REVOKED (Reg. No. 5,105,132), CARD REVOKED (Reg. No. 5,067,272), and BLACK CARD REVOKED (Reg. No. 4,927,011).

115. According to the USPTO, each of the CFA Marks have been registered, listing Zahara as the Applicant and thus the "owner" of each of registration.

116. On each application for registration, Christian signed the following sworn statement:

Declaration

The signatory believes that: if the applicant is filing the application under 15 U.S.C. § 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; the applicant is using the mark in commerce on or in connection with the goods/services in the application; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; and/or if the applicant filed an application under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or any

16

registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

117.    The CFA Partnership was the lawful and constructive owner of the CFA Marks.

118.    Zahara was not the rightful owner of the CFA Marks.

119.    The declaration made by Zahara via Christian was false.

120.    Zahara, through its counsel, falsely and fraudulently represented to the USPTO and the public that it was the owner of each CFA Mark with intent to deceive the USPTO and the public as to the rightful owner of the CFA Marks.

121.    The USPTO relied on the misrepresentations made by Zahara Zahara's counsel and approved the applications of the CFA Marks for registration.

122.    As a partner in the CFA Partnership and member of the public, Williams has been damaged by the false registrations of the CFA Marks listing Zahara as the owner rather than the CFA Partnership.

123.    Because the registrations of the CFA Marks falsely and incorrectly list Zahara as the legal owner of the registrations, this court may and should rectify the USPTO register with respect to registrations of the CFA Marks pursuant to 15 U.S.C. §§ 1119 and 1120 to properly list the CFA Partnership, and its two partners, Bobo and Williams, as the lawful owners of the CFA Marks' USPTO registrations.

124.    Alternatively, this court should order that the USPTO cancel the fraudulent registrations for the CFA Marks pursuant to 15 U.S.C. § 1120, § 1119 and § 1064 in order to allow Williams and Bobo to register the CFA Marks with the USPTO on behalf of the CFA Partnership.

## COUNT VIII – FALSE DESIGNATION OF ORIGIN

125.    Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

126.    By making unauthorized use of the CFA Marks in interstate commerce, Zahara has used a "false designation of origin" that is likely to cause confusion, mistake or deception as to the affiliation or connection of Zahara with the CFA Partnership and/or as to the sponsorship or approval of Zahara's goods by the CFA Partnership, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

127.    Zahara's acts as alleged herein misrepresent the nature, characteristics, or qualities of its goods, services, or commercial activities.

128.    Zahara's acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to describe and/or represent, in a false or misleading fashion, Zahara's products as those of Plaintiff's in violation of Section 43(a) of the Lanham Act.

## COUNT IX – DECEPTIVE AND UNFAIR TRADE PRACTICES

129.    Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

130.    Through the conduct described above, Zahara has engaged in deceptive trade practices in violation of O.R.C. § 4165.01, *et. seq.*

131.    Specifically, Zahara's conduct includes, without limitation, violations of the following:

    a)   O.R.C. 4165.02(A)(1) by passing off goods or services as goods of another;

b)  O.R.C. 4165.02(A)(2) by causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

c)  O.R.C. 4165.02 (A)(3) by causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

d)  O.R.C. 4165.02(A)(4) by using deceptive representations in connection with goods or services;

e)  O.R.C. 4165.02(A)(7) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that the person does not have;

f)  O.R.C. 4165.02(A)(10) by disparaging the goods, services, or business of another by false  representation of fact;

132.    This conduct, unless enjoined by this Court, will continue to cause irreparable injury to Williams and the CFA Partnership business and reputation for which there is no adequate remedy at law.

133.    Zahara's conduct is deliberate and willful and has been committed with the intent to cause confusion and mistake, to deceive the public, and/or to misrepresent the affiliation, connection or sponsorship of Zahara's goods and commercial activities with those of the CFA Partnership business and the CFA Products.

134.    Zahara will continue its acts of deceptive trade practices, causing irreparable injury to Williams and the CFA Partnership, unless restrained and enjoined by this Court.

135.    As a direct and proximate result of Zahara's ongoing unlawful activities, Williams has and continues to suffer damages.

136.    Williams is therefore entitled to injunctive relief, monetary damages, and attorney's fees pursuant to O.R.C. § 4165.03.

## COUNT X – RIGHT OF PUBLICTY AND PRIVACY

137.    Williams realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

138.    The Defendants have used and continue to use advertisements containing images of Plaintiff in connection with their commercial efforts to monetarize the CFA Products and intellectual property.

139.    Plaintiff has not provided written consent or has otherwise consented to the ongoing use of her image and likeness in connection with the Defendants, their businesses, or any goods and services.

140.    By the unauthorized use of Plaintiff's image to advertise its business and to promote its goods and services, Defendants invaded Plaintiff's rights of publicity and privacy, including violations of N.Y. Civ. Rights Law §§ 50 – 51 *et. seq.*, *inter alia.*

141.    As a result of Defendant's unauthorized use of her image and likeness, Plaintiff has suffered commercial damage to her image and persona for the loss of payment of any licensing opportunities for Defendant's advertisements and the use of her image and likeness.

142.    Unless Defendants are enjoined from further use and publication of Plaintiff's image and likeness, Plaintiff will suffer further irreparable injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Williams respectfully requests that this Court:

A. Declare Williams is a co-author and co-owner of the copyrights for Black Card Revoked and the CFA Products and is entitled to one-half of the revenue earned from the exploitation of those copyrights;

B. Enter Judgment against Bobo and Zahara, and in favor of Williams, for one-half of the revenue earned from the sales, licensing, and all other exploitation of the copyrights for Black Card Revoked and the CFA Products;

C. Declare that Williams and Bobo formed the CFA Partnership as equal partners;

D. Declare that the CFA Partnership is the lawful owner of the CFA Products, Black Card Revoked and all related assets created by Williams and Bobo in connection with the creation of the CFA Products and Black Card Revoked;

E. Declare that Williams is a partner in the CFA Partnership and is entitled to one-half of the revenue earned under that partnership;

F. Enter Judgment against Bobo and Zahara, and in favor of Williams, for one-half of the revenue earned from the sales, licensing, and all other exploitation of assets of the CFA Partnership, including, without limitation, revenue derived from the CFA Products and Black Card Revoked;

G. Enter Judgment that Bobo and Zahara have breached their fiduciary duties to Williams and Order Bobo, Zahara, and MTF to provide an accounting to Williams;

H. Enter Judgment that Bobo and Zahara have been unjustly enriched and award monetary damages to Williams for the sums for which Bobo and Zahara were unjustly enriched;

I. Order that Bobo provide Williams with all documentation regarding revenue and expenses related to exploitation of the copyrights for Black Card Revoked and the CFA Products;

21

J.      Order that Bobo provide all documentation regarding revenue and expenses related to MTF to Williams;

K.      Declare that the CFA Partnership is the owner of the CFA Marks;

L.      Rectify USPTO records for the CFA Marks pursuant to 15 U.S.C. § 1120 and § 1119 by ordering the USPTO to correct the registrations of the CFA Marks to properly and accurately list Williams and Bobo on behalf of the CFA Partnership as the lawful owners of the CFA Marks;

M.      Award damages to Williams pursuant to 15 U.S.C. § 1120 and § 1119;

N.      Order that Bobo return misappropriated funds to MTF or, alternatively, an award of damages in favor of Williams for half of the misappropriated amount;

O.      Order that Zahara and Bobo cease and desist from any and all use of the CFA Marks without authorization from the CFA Partnership;

P.      Award Williams her actual damages pursuant to O.R.C. § 4165.03.

Q.      Award Williams damages pursuant to 15 U.S.C. § 1125(a);

R.      Award Williams with all costs and reasonable attorneys' fees in this action, as appropriate, including pursuant to O.R.C. § 4165.03;

S.      Award Williams general and punitive damages regarding her publicity and privacy claims;

T.      Order and enjoin Defendants from further use of Williams' image and likeness in connection with Defendant's commercial efforts and/or advertising without Williams' consent;

U.      Award Williams with pre- and post-judgment interest at the maximum legal rate and costs;

V.      Grant to Williams such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Williams requests a trial by jury on all triable issues.

*/s/ James D. Abrams*

James D. Abrams (0075968), Trial Counsel
jabrams@taftlaw.com
Leon D. Bass (0069901)
lbass@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
65 E. State St., Suite 1000
Columbus, OH 43215
Phone: (614) 221-2838
Fax: (614) 221-2007

*Attorneys for Plaintiff*
*Latesha Williams*

75001675v2