UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Latesha Williams,

    Plaintiff,

v.

Jaryah Bobo, *et al.*,

    Defendants.

Case No. 2:22-cv-3561

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Jaryah Bobo ("Bobo"), MTF Partners LLC ("MTF"), and Zahara Ariel LLC ("Zahara" collectively, "Defendants") move to dismiss Latesha Williams's ("Plaintiff") Complaint. ECF No. 15. For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.    FACTS[1]

In 2015, Plaintiff and Bobo partnered to create the game "Black Card Revoked," a game "centered around the shared Black experience" (the "Game"). Comp. ¶¶ 14, 19, ECF No. 1. Plaintiff contributed significantly to the creation of the Game, including the concept, and the selection, drafting, and revisions of its concept and contents. *Id.* ¶ 20. Plaintiff also contributed to the commercialization of the Game. *Id.* ¶¶ 20–21.

---

[1] The Court accepts Plaintiff's factual allegations as true for the purposes of Defendants' motion. *Warner v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022).

The Game became very popular. *Id.* ¶ 22. It was the "leading American black culture trivia game in the United States," and Black Entertainment Television aired a television show based on the Game. *Id.* The Game led to spin-off games, including "Gay Card Revoked" and "Jewish Card Revoked" (collectively with the Game, the "Products"). *Id.* ¶¶ 23, 30.

Bobo told Plaintiff that he was handling legal and business issues related to the Products. *Id.* ¶¶ 36–37. Plaintiff alleges, however, that Bobo, through Zahara—a limited liability company of which Bobo is the sole member—monetized the Products for solely his own benefit and that Plaintiff has never been compensated for her co-authorship of the Products. *Id.* ¶¶ 38–51.

Meanwhile, Plaintiff and Bobo formed MTF to commercialize the Products for television and film. *Id.* ¶ 52. In April 2017, Zahara and MTF entered into a licensing agreement (the "Agreement"). The Agreement stated that Zahara was "the sole and exclusive owner of a copyright and trademark portfolio" of the Products and that the trademarks related to the Products were "unique and original" to Zahara. *Id.* ¶ 53; Agreement, ECF No. 1-2. But, although the Agreement arguably defines Zahara as the owner and/or author of the Products, the Agreement does not purport to actually assign any ownership or authorship rights to Zahara. Agreement, ECF No. 1-2. And, neither Plaintiff nor Bobo, as individuals, were parties to the Agreement. Agreement, ECF No. 1-2. Plaintiff alleges she never consented to transfer her authorship or ownership rights to Zahara or executed any agreements to that effect. Compl. ¶ 54, ECF No. 1.

Plaintiff further alleges that Bobo wrongfully diverted funds from MTF to himself or Zahara. *Id.* ¶ 56. Plaintiff has requested an accounting and other business information from MTF and Zahara. *Id.* ¶¶ 58–60. Bobo refused to provide any of the requested information. *Id.* ¶ 61.

Based on all these events, Plaintiff sued Defendants, asserting several causes of action. *See generally, id.*

## II. STANDARD OF REVIEW

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Warner v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted).

However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

Plaintiff asserts these claims: (1) declaratory judgment of copyright authorship; (2) declaratory judgment of the existence of a partnership; (3) breach of fiduciary duty; (4) request for accounting on copyright revenue and expenses; (5) request for accounting regarding MTF; (6) unjust enrichment; (7) false or fraudulent trademark registration; (8) false designation of origin; (9) deceptive and unfair trade practices under Ohio Revised Code § 4165.01, *et seq.*; and (10) right of publicity and privacy.[2] *See generally*, Compl., ECF No. 1. Defendants move to dismiss all claims. ECF No. 15.

### A.  Copyright Act Claims (Claims I and IV)

Defendants seek to dismiss Plaintiff's ownership and authorship claims as time barred. As a preliminary issue, it is not clear that Plaintiff is asserting a copyright *ownership* claim. In the Complaint, Plaintiff lists her primary copyright claim as an authorship claim. Compl. ¶¶ 64–73, ECF No. 1. However, whether, and how much, Plaintiff can recover on some remedies she seeks depends on whether she has ownership rights in the Products. Therefore, the Court will

---

[2] Several of these "claims" are more appropriately considered a remedy, rather than a cause of action. However, that distinction is irrelevant for this Opinion, and the Court will refer to all of the above as "claims."

consider whether Plaintiff's ownership claim—if she asserts such a claim—is barred by the statute of limitations.

Article I, Section 8 of the United States Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. I, § 8. To that end, the Copyright Act extends protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a).

All copyright claims have a three-year statute of limitations. 17 U.S.C. § 507(b). For an ownership or authorship claim, the claim accrues when "there is a plain and express repudiation" of the plaintiff's ownership or authorship rights by someone with a claim of ownership or authorship. *Garza v. Everly*, 59 F.4th 876, 880 (6th Cir. 2023) (cleaned up). The Sixth Circuit recognizes three types of repudiation: "direct repudiation, publication of the work without credit, and non-receipt of royalties." *Everly v. Everly*, 958 F.3d 442, 452 (6th Cir. 2020) (quotation marks and citations omitted).

Only direct repudiation is relevant here. Direct repudiation is "a direct statement from one party to another claiming exclusive rights to the work." *Id.* at 451.

In the context of ownership, direct repudiation "can be effectuated by a non-author who has been assigned ownership rights by an author." *Id.* at 454.

Thus, for purposes of Plaintiff's ownership claim, repudiation could be made by either Bobo or anyone to whom Bobo had assigned his ownership rights.

By contrast, in the context of authorship, direct repudiation "must be made by an author herself because, unlike ownership, authorship is not transferrable by contract." *Id.* As a result, repudiation "must come from someone claiming authorship, not a third party." *Garza*, 59 F.4th at 881. Here, that means that Plaintiff's authorship rights could be repudiated only by Bobo.

Defendants argue that the Agreement was a direct repudiation of Plaintiff's ownership and authorship rights because it explicitly referred to Zahara as both the sole owner and, arguably, sole author of the Products. Mot. 5–12, ECF No. 15. Defendants point out that Plaintiff signed the Agreement in her capacity as a member of MTF and was thus aware of the direct repudiation. *Id.* Thus, Defendants argue, the Agreement was a direct repudiation that started the statute of limitations on both Plaintiff's ownership and authorship copyright claims. *Id.*

The Court disagrees. Based on the allegations in the Complaint and the terms of the Agreement, there has not been a direct repudiation of either Plaintiff's authorship or ownership. True, the Agreement defines Zahara as an owner (and possibly author) of the Products, but the Complaint does not allege that Zahara was, *in fact*, an owner or author of the Products. In fact, it alleges the opposite—that the Agreement's definition was factually incorrect. This is fatal to Defendants' direct repudiation arguments at this stage of the proceeding.

First, consider ownership. A direct repudiation of ownership can be effectuated by a non-author, but that non-author must have "been assigned ownership rights by an author." *Everly*, 958 F.3d at 454. Here, there are no allegations that Bobo or Plaintiff ever assigned his ownership rights to Zahara; indeed, Plaintiff specifically alleges that she did *not* assign her ownership rights to Zahara. Compl. ¶ 55, ECF No. 1. Thus, per the allegations in the Complaint, Zahara did not have a "competing claim of ownership," regardless of the language in the Agreement. *Everly*, 958 F.3d at 451. As a result, the Court cannot find at the motion to dismiss stage that the Agreement was a direct repudiation of Plaintiff's ownership.

The authorship analysis is even more straightforward. Authorship "is not transferrable by contract." *Id.* at 454. Thus, repudiation must be done by someone who has a "claim of authorship in the work in question and also some significant involvement in the statement or act of repudiation, of which the other person is aware." *Id.* The Complaint alleges that Bobo and Plaintiff, not Zahara, are the co-authors of the Products. Compl. ¶ 14, ECF No. 1. Thus, any direct repudiation of authorship must have come from Bobo, not Zahara. Because Zahara could not repudiate Plaintiff's authorship, the Agreement is not a direct repudiation of Plaintiff's authorship.

Defendants argue against this conclusion by pointing out that Bobo signed the Agreement. However, Bobo signed the Agreement only in his capacity as Zahara's representative. Agreement 4, ECF No. 1-2. Bobo, the individual, was

not a party to the Agreement, nor does the Agreement purport to speak for Bobo, the individual. *Id.* Thus, statements contained in the Agreement cannot be considered a repudiation made by Bobo.

Finally, in a footnote of Defendants' reply brief, Defendants also argue that Plaintiff's status as an owner and author were repudiated when she did not receive the royalties to which she was allegedly entitled. Defendants did not meaningfully make this argument in their motion: the only references to repudiation-by-non-receipt-of-royalties appear in long block quotes explaining the blackletter law. Mot. 8–10, ECF No. 15. Nowhere do Defendants actually *argue* that repudiation-by-non-receipt-of-royalties applies here. Accordingly, because Defendants made this argument for the first time in their reply, the Court will not address it. *See Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived." (citation omitted)).

At bottom, based on the allegations in the Complaint, and the face of the Agreement, there was no obvious direct repudiation of authorship and ownership. Thus, those claims cannot be dismissed as untimely at this point. Of course, discovery may reveal facts that significantly change this analysis. If that happens, Defendants may raise the statute of limitations issue on summary judgment.

Defendants also argued that Plaintiff's copyright accounting claim should be dismissed because the other copyright claims should be dismissed. Because

the Court is not dismissing the other copyright claim, neither does it dismiss the accounting claim. Defendant's motion to dismiss, as to Plaintiff's Copyright Act claims is, therefore, **DENIED**.

**B.     Claims II, III, and VI**

Plaintiff seeks a declaratory judgment on the existence of a partnership (Claim II) and asserts claims for breach of fiduciary duty (Claim III) and unjust enrichment (Claim VI) (collectively, the "Partnership Claims"). Compl. ¶¶ 74–97, 104–110, ECF No. 1. For Claim II, Plaintiff seeks a declaration that Plaintiff and Bobo had a de facto partnership and that, as a member of this partnership, Plaintiff was entitled to half of the partnership's revenue from the Products. *Id.* ¶¶ 74–83. In Claim III, Plaintiff alleges that, because Bobo and Plaintiff had a de facto partnership, Bobo owed a fiduciary duty to Plaintiff and that Bobo breached that duty by, *inter alia*, failing to compensate Plaintiff "for her co-authorship and co-ownership" of the Products. *Id.* ¶¶ 84–97. In Claim VI, Plaintiff alleges that Bobo and Zahara have been unjustly enriched by profiting from the Products without compensating Plaintiff. *Id.* ¶¶ 104–10.

Defendants argue that these claims should be dismissed because they are preempted by the Copyright Act and, therefore, are time barred.

The Copyright Act preempts some types of state-law claims. *Ritchie v. Williams*, 395 F.3d 283, 285–87 (6th Cir. 2005). The types of state-law claims that are preempted "share two qualities." *Wright v. Penguin Random House*, 783 F. App'x 578, 582 (6th Cir. 2019) (cleaned up). First, the state-law claim must

involve a work "within the scope of the 'subject matter of copyright,' as specified in [the Copyright Act]" (the "subject matter test"). *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). Second, the state-law claim "must be equivalent to any of the exclusive rights within the scope of federal copyright protection" (the "equivalency test"). *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) (citation omitted).

### 1. Subject Matter Test

To satisfy the subject matter test, the "intellectual property at issue must be eligible for copyright protection." *Wright*, 783 F. App'x at 582. Each of the partnership claims meets the subject matter test because each is based on alleged wrongful conduct related to or use of the Products. Compl. ¶¶ 74–97, 104–110., ECF No. 1 At least some aspects of the Products are eligible for copyright protection (*e.g.*, any visual artwork or literary instructions) and, therefore, the subject matter test is satisfied. *See Clever Factory, Inc. v. Kingsbridge Int'l, Inc.*, No. 3:11-1187, 2013 WL 5375258, at *9 (M.D. Tenn. Sept. 24, 2013) (concluding that the subject matter test was satisfied where the plaintiff was challenging the defendant's use of "knock off" card games).

### 2. Equivalency Test

To evaluate equivalency, courts use a "functional test" that "asks whether the state claim seeks to protect rights similarly protected by the Copyright Act." *Wright*, 783 F. App'x at 582 (citing *Stromback*, 384 F.3d at 301). That is, courts "ask whether the conduct that allegedly violated the right at the core of the state-

law claim is also conduct that infringes on a right protected by the Copyright Act." *Id*. If the answer is "yes," the state-law claims are preempted, "even where the state cause of action contains slightly different elements." *Id*.

Here, the equivalency test is met. Each of the Partnership Claims seeks to either protect Plaintiff's interest in the Products or to compensate her for the wrongful use of the Products. In other words, each of the Partnership Claims "depend on [Defendants'] alleged use of [Plaintiff's] original work without permission or compensation." *Id*. (internal quotation marks and citations omitted). Accordingly, the Partnership Claims try to protect rights already protected by the Copyright Act and, as a result, the equivalency test is met.

Because both the subject matter and equivalency tests are met, the Partnership claims are preempted. Whether they are time-barred is irrelevant because the Partnership Claims must be dismissed as preempted. Accordingly, as to Claims II, III, and IV, Defendants' motion to dismiss is **GRANTED**.

**C.    Lanham Act Claims (Claims VII and VIII)**

Defendants argue that Plaintiff's Lanham Act Claims (Claims VII and VIII) are barred by the statute of limitations.

The Lanham Act does not include a statute of limitations, so courts have applied the equitable doctrine of laches to determine whether a Lanham Act claim is barred because of a delay in filing. *Kehoe Component Sales Inc. v. Best Lighting Prods.*, 796 F.3d 576, 584 (6th Cir. 2015). "Laches" is the "negligent and unintentional failure to protect one's rights." *Nartron Corp. v.*

*STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). To succeed on the laches defense, a defendant must demonstrate: (1) the plaintiff failed to diligently protect its rights; and (2) the defendant suffered prejudice as a result. *Id.*

Because the application of the laches doctrine is fact-based, it is often inappropriate to address the issue on a Rule 12 motion. *Leonard Truck & Trailer Inc. v. Leonard Buildings & Truck Accessories*, No. 4:21-CV-2362, 2022 WL 2757724, at *4 (N.D. Ohio July 14, 2022) (explaining that a motion to dismiss is generally an "inappropriate vehicle" for "the fact-specific inquiry that surrounds the equitable doctrine of laches" (citing cases)). This difficulty of addressing laches on a Rule 12 motion is heightened where, as here, Defendants did not fully brief the issue. Accordingly, as to the Lanham claims, Defendants' motion to dismiss is **DENIED**.

**D.  Ohio Deceptive and Unfair Trade Practices Act (Claim IX)**

Defendants argue that Plaintiff's claim under the Ohio Deceptive and Unfair Trade Practices Act ("ODTPA") must be dismissed as time barred.

The ODTPA "does not contain its own statute of limitations provision[.]" *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, No. 3:20-CV-536-JGC, 2021 WL 9166417, at *6 (N.D. Ohio June 8, 2021). Thus, the "ground of the action and the nature of the demand determine which statute of limitation is applicable[.]" *Kunz v. Buckeye Union Ins. Co.*, 437 N.E.2d 1194, 1196 (Ohio 1982) (internal quotation marks and citations omitted). In other words, courts

"apply the statute of limitations for claims based on the same sort of misconduct alleged." *CajunLand Pizza, LLC*, 2021 WL 9166417, at *6 (citing cases).

No party addresses what other state-law claims are "based on the same sort of misconduct," nor, by extension, which statute of limitations applies to Plaintiff's ODTPA claim. The Court declines to decide the matter without briefing. Accordingly, as to the ODTPA claim, Defendants' motion is **DENIED**.

### E.    Remaining State-Law Claims (Claims V, and X)

Defendant, on the assumption that the Court would dismiss all federal claims, asks the Court to decline to exercise supplemental jurisdiction over the remaining state-law claims: Claims V, and X ("Remaining Claims"). Mot. 18, ECF No. 15. Because the Court has not dismissed all federal claims, this argument is without merit.

### F.    Motion to Stay

As a final matter, Defendants move to stay discovery pending the Court's resolution of the motion to dismiss. ECF No. 29. Because the Court has now ruled on the motion to dismiss, the motion to stay is **DENIED AS MOOT**.

### IV.    CONCLUSION

For these reasons, Defendants' motion to dismiss, ECF No. 15, is **GRANTED IN PART** and **DENIED IN PART**. Claims II, III, and VI are dismissed with prejudice as preempted by the Copyright Act. No other claims are dismissed.

Defendants' motion to stay, ECF No. 29, is **DENIED AS MOOT**.

The Clerk shall terminate ECF Nos. 15 and 29.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**